IN THE UNITED STATES DISTRICT COURT OF ~~PENNSYLVANIA~~ MIDDLE PENNSYLVANIA

Ronald Satish Emrit,
Plaintiff

v.

Charles Barkley, Subway, and Fanduel,
Defendants

3:CV-23-0079

C.A. No. _____

FILED
SCRANTON
JAN 17 2023
Per _____
DEPUTY CLERK

# COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit who is bringing forth this violation against the three defendants for having committed a combination of commercial tort(s) and at least one dignitary tort, i.e. invasion of privacy through intrusion upon seclusion. In bringing forth this complaint, the plaintiff states, avers, a alleges the following:

## I.) NATURE OF THE CASE

1.) While the Do-Not-Call Registry (DNC) and Can-Spam Act of 2003 are enforced by the Federal Trade Commission (FTC) regarding what the plaintiff was to describe as "excessive advertising," the plaintiff argues that there should be similar, restrictive regulations enforced

①

2.) The JS-44 (Civil Cover Sheet) lists one of the causes of action as Telephone Consumer Protection Act and Consumer Credit (15 U.S.C. §1681 or 1692), although those provisions are presumably inapplicable in addition to laws applying to "junk faxes" given that Hotmail/Microsoft and Cable TV involve the internet and television rather than telephone communications involving fiber optic cables, kevlar, and total internal reflection.

3.) Pursuant to Rule 201 of Federal Rules of Evidence (FRE) the court should take judicial notice that Federal Trade Commission (FTC) has a Bureau of Economics and a Bureau of Consumer Protection which has jurisdiction to oversee the subject matter involving unsolicited commercial email (spam), telemarketing/cold calls from stockbrokers for example, identity theft issues, and enforcement of Anti-Trust Law (Sherman Act/Clayton Act) by either approving or denying acquisitions and mergers thereby preserving perfect competition in the economy by precluding the formation of monopolies and/or oligopolies.

4.) Furthermore the court can take judicial notice that the plaintiff applied for a job perhaps as a paralegal with FTC in 2004 in Washington, D.C. and also requested an inquiry from FTC about a company d/b/a Quixtar, i.e. a multi-level marketing company supposedly with the "pyramid sales model" like Amway and what are commonly referred to as "diamond independent business operators" or IBO's similar to Referring Travel Agents or RTA's

②

national (YTBI) of "team trainers" with ACN with its principle place of business (ppb) and/or nerve center in North Carolina.

## II.) JURISDICTION AND VENUE

5.) The plaintiff is an indigent, disabled, and unemployed resident of the state of Florida. His current address is 6655 38th Lane East, Sarasota, Florida 34243 and his telephone number is (703) 936-3043.

6.) The first defendant is Charles Barkley, i.e. a well-known former NBA player for the Philadelphia 76ers, Phoenix Suns and Houston Rockets.

7.) The second defendant is d/b/a Subway, i.e. a well-known fast food chain known for its submarine sandwiches and its infamous former spokesperson "Jared" who is perhaps a public relations nightmare and marketing mistake for the franchise.

8.) The third defendant is d/b/a Fanduel which is somehow connected to the sporting world and perhaps ESPN and also involves (Charles) Barkley as a spokesperson in the same manner as Subway.

## III.) JURISDICTION AND VENUE

9.) While commercial tort issues are perhaps the subject matter of local or state courts, the plaintiff argues that the U.S. District Court of Alabama has subject matter jurisdiction because there is complete diversity of jurisdiction between the plaintiff and the three defendants. Although

③

Florida establishing systemic and continuous contacts which would be contrary to this idea of diversity of jurisdiction.

10.) As an Article III court, the U.S. District Court of Alabama also has personal (original) and exclusive jurisdiction because the first defendant is presumably from Alabama and attended Auburn University (either in Mississippi or Alabama).

11.) Furthermore, the plaintiff argues that the U.S. District Court of Alabama also has subject matter jurisdiction because of a discussion of the black-letter law provisions of Can-Spam Act of 2003, Do-Not-Call Registry (DNC), Consumer Financial Protection Board (CFPB), Junk Faxes and other consumer protection laws enforced by Federal Trade Commission (FTC), Federal Communications Commission (FCC), International Trade Commission (ITC) and/or Securities Exchange Commission (SEC) which could also involve the previously-mentioned Telephone Consumer Protection Act and Consumer Credit (15 U.S.C. §1681 or 1692).

12.) Finally, the plaintiff argues that the U.S. District Court of Alabama has jurisdiction because the amount in controversy exceeds $75,000 (i.e. $80,000).

## IV.) STATEMENT OF FACTS

13.) While the plaintiff is using his Hotmail account, the plaintiff frequently sees vertical banner advertisements featuring Charles Barkley for either a sporting goods store, Fanduel, or Subway.

14.) While the plaintiff is watching Cable Television through

(4)

Sarasota, Florida) the plaintiff is constantly seeing advertisements from either Subway, FanDuel, and sporting goods store featuring Charles Barkley as a spokesperson.

15.) Accordingly, the plaintiff argues that these commercials and/or advertisements featuring Charles Barkley are annoying and interfere with the plaintiff's concentration, especially while the plaintiff is using his Hotmail account in the ordinary course of business.

16.) Because it is well-known that the plaintiff has litigated against Central Intelligence Agency (CIA) in Iowa, Maryland, Virginia, West Virginia, Maryland, Washington, D.C. and Northern Florida, the plaintiff would even go as far to suggest that CIA utilizes advertisements of Charles Barkley in Subway, FanDuel, and sporting goods to annoy or harass the plaintiff.

## V.) COUNT ONE: VIOLATION OF BUSINESS JUDGMENT RULE

17.) While the plaintiff is neither a shareholder nor officer of Subway, FanDuel, or a sporting goods store, the plaintiff argues that the Board of Directors for the aforementioned companies have violated the Business Judgment Rule by choosing Charles Barkley to be the spokesperson for their products.

18.) More specifically, the plaintiff argues that reasonable prudent directors on the Boards of Directors for the aforementioned companies violate their duty of care by failing to realize that Charles Barkley is not as marketable in 2022 or 2023 as the following athletes: Patrick Ma-

(5)

19.) Furthermore, the plaintiff argues that the Boards of Directors for these companies violate the Business Judgment Rule by failing to recognize that Charles Barkley does not have the demeanor, charisma, personality, charm, or legacy to be the spokesperson for any company, including the aforementioned companies which could be described as having public relation issues.

20.) Nevertheless, the discussion of Stockholder Derivative Actions, Corporate Opportunity Doctrine, Interested Director Transactions, Self-Dealing, Misfeasance, Malfeasance, Non-Feasance, Breach of Fiduciary Duty (citing the stare decisis of <u>Meinhard v. Salmon</u>, invoking the duty of utmost good faith and "highest punctilio of an honor") and Business Judgment Rule are usually reserved for shareholders of a publicly-traded corporation or franchise (NYSE, Standard and Poor's 500, NASDAQ, DJIA) or for those parties in "privity of contract" with said corporations, the plaintiff argues that he has standing, causation, and redressability; filed a lawsuit against the aforementioned defendants specifically because of the argument that the plaintiff is a consumer of both cable television and email (Hotmail/Microsoft) that is negatively-impacted by annoying commercials of Charles Barkley on Cable TV or vertical banner advertisements by Subway, FanDuel, and/or sporting goods store.

VI.) COUNT TWO: VIOLATION OF CAN-SPAM ACT OF 2003 AND CONSUMER LAW RELATED TO JUNK FAXES

21.) While many companies are usually fined for sending

(6)

subject headers for this email, the plaintiff argues that a broad interpretation of Can-Spam Act of 2003 and similar junk fax laws applies to annoying commercials on Cable Television and vertical banner advertisements on Hotmail/Microsoft, Yahoo, but not GMail (no advertisements/Google.

22.) Furthermore, this occasionally involves the Computer Fraud and Abuse Act (CFAA) when spoofed, anonymous, or fraudulent emails are sent from the accounts of computers in which perhaps a private server has been hacked into by a cybersecurity expert.

## VII.) VIOLATION OF REGULATIONS INVOLVING DO-NOT-CALL REGISTRY (cont.

23.) As a natural extension to the aforementioned arguments regarding the Can-Spam Act of 2003 and junk faxes applied to commercials on Cable Television, the plaintiff argues that a broad interpretation of Do-Not-Call Registry (DNC) enforced by the Federal Trade Commission (FTC) would indicate that Subway, Fanduel, and sporting goods store have violated the regulations involving Do-Not-Call Registry with their annoying advertisements featuring Charles Barkley as the spokesperson.

## VIII.) COUNT FOUR: PUBLIC NUISANCE

24.) Furthermore, the plaintiff argues that Cable TV and internet advertisements featuring Charles Barkley as the public spokesperson constitute a public nuisance substantially similar to annoying billboards (perhaps owned by Lamar, Clear Channel Outdoor, and/or Viacom) in a neighborhood obstructing the view and concentration of multiple consumers of

⑦

deed as opposed to a quitclaim deed in a race notice or race notice jurisdiction as a Bona fide Purchaser for Value CBF

## IX.) COUNT FIVE: INVASION OF PRIVACY THROUGH INTRUSION UPON SECLUSION

25.) Moreover, the plaintiff argues that obtrusive or annoying advertisements featuring Charles Barkley on Cable Television or internet (Hotmail)(Microsoft) constitute an invasion of privacy through intrusion upon seclusion because advertisements are a way for complete strangers to invite their way into the homes of consumers.

## X.) COUNT SIX: PRODUCTS LIABILITY

26.) The plaintiff argues that the defendants have committed a design defect or manufacturing defect under a theory of strict liability or negligence with the interpretation that commercials on Cable TV or internet have been placed in the international stream of commerce through ordinary channels of distribution even though the plaintiff is a direct consumer of Verizon Fios, Samsung LED/LCD televisions, Spectrum Internet, and in the past DirecTV (subsidiary of AT&T) or CenturyLink Internet (in Las Vegas) and not specifically paying consumer of FanDuel, Subway, or the sporting goods store.

## XI.) COUNT SEVEN: BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY

27.) Under a similar theory as doctrine of transferred intent, plaintiff argues that the aforementioned companies of Subway, FanDuel, and the sporting goods store have committed a breach of the implied warranty of merchantability even though the plaintiff

⑧

## XII.) COUNT EIGHT: BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

28.) Likewise, the plaintiff argues that the intended purpose of his use of Cable Television is for entertainment purposes and occupational therapy, in that the intended purpose of using his Hotmail/Microsoft is in the ordinary course of business or for other issues perhaps involving Privacy Act of 1974 and/or HIPAA, Fourth Amendment (in which there is a "reasonable expectation of privacy" citing stare decisis of Katz v. United States

29.) In other words the plaintiff does not consume electronic services or products issued by Microsoft/Hotmail, Samsung, Verizon Fios, Spectrum Internet, and/or Metro by T-Mobile to support or endorse products as part of the inventory of Subway, Fanduel, and/or sporting goods store involving a LIFO or FIFO method of accounting or just-in-time manufacturing, Kanban, or Keiretsu involving Strategic Business Units (SBU) and/or Stock Keeping Units (SKUs).

## XIII.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is requesting a remedy in the amount of $4.5 million in the form of joint and several liability from the three co-defendants (perhaps involving contribution and indemnity) in addition to an injunction, an equitable remedy in the form of a "cease and desist order" in which the three co-defendants are precluded and/or enjoined from advertising to the plaintiff on Microsoft, Hotmail, or Cable TV involving Verizon Fios or Spectrum

⑨

A.) The remedy in the form of $45 million could be considered to be punitive, compensatory, or treble damages for the aforementioned commercial torts and dignitary tort of invasion of privacy through intrusion upon seclusion (given that vertical banner advertisements are not welcome in the plaintiff's home.

B.) This remedy of $45 million could also be considered to be expectation, reliance, restitution, incidental, consequential, or liquidated damages if and only if (iff) the court finds that the plaintiff is in "privity of contract" as an incidental or intended beneficiary or through an assignment of rights or delegation of duties since Hotmail/Microsoft, Verizon, Metro by T-Mobile, Samsung, and Spectrum Internet, DirecTV, AT&T, and Century Link are in "privity of contract" with Slowdey, Fanduel, and sporting goods franchise.

C.) The damages of $45 million could also be considered to be actual, presumed, or special damages given the dignitary tort of invasion of privacy.

D.) The plaintiff argues that the court should issue a preliminary injunction pursuant to Rule 65 of Federal Rules of Civil Procedure (FRCP) as a cease-and-desist order.

Respectfully submitted,

Ronald Satish Emmet
Ronald Satish, Emn't
6655 38th Lane East
Sarasota, Florida 34243
(703) 986-3043

(10)

Satish Smart
6655 38th Lane East
Sarasota, Florida 34243

Attn: Clerk of the Court
U.S. District Court of Middle
Pennsylvania
Max Rosenn U.S. Courthouse
197 South Main Street
Wilkes-Barre, Pennsylvania 18701

RECEIVED
WILKES BARRE
JAN 10 2023
PER _____